**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11725

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

COREY GADDY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00262-WFJ-AEP-2

————————————

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

PER CURIAM:

Corey Gaddy appeals his 216-month prison sentence for crimes related to the distribution of a mixture or substance containing fentanyl. We affirm his sentence.

## I. BACKGROUND

Beginning in the summer of 2017, Corey Gaddy and Shawn Rodriguez orchestrated a drug-dealing operation in the Madeira Beach area. According to Rodriguez's trial testimony, Gaddy regularly supplied Rodriguez with heroin and fentanyl, which Rodriguez subsequently distributed to the coastal community. After law enforcement linked Gaddy and Rodriguez's operation to the fentanyl overdoses of J.C., A.R., K.E., and J.P.,[1] the two men were indicted by a grand jury.

In the original indictment, the grand jury listed charges against Gaddy and Rodriguez. Count I charged both men with conspiracy to distribute and possess a controlled substance resulting in the death of K.E. Count II charged them with possessing with intent to distribute and distribution of a controlled substance resulting in the death of K.E.[2] Both counts included the involvement of fentanyl, making both punishable under 21 U.S.C. § 841(b)(1)(C).[3]

---

[1] K.E.'s and J.P.'s overdoses resulted in their deaths.

[2] The original indictment also included Count III which charged only Rodriguez with possession with intent to distribute.

[3] That statute provides statutory maximum and minimum penalties for drug crimes involving a schedule I or II controlled substance where "death or serious bodily injury results from the use of such substance." 21 U.S.C. § 841(b)(1)(C).

In the first superseding indictment, the grand jury altered the charges slightly. To Count I, they added that the conspiracy resulted in the death of K.E. *as well as the serious bodily injuries of J.C. and A.R.* The grand jury left Count II unchanged.[4]

Rodriguez pleaded guilty to Count I of the first superseding indictment in a written plea agreement in which he promised to cooperate with the Government.

Finally, the grand jury issued the second superseding indictment, which is the operative indictment relevant to this appeal. It charged Gaddy with the following:

- Count I: Conspiracy to distribute and possess with intent to distribute controlled substances, the use of which resulted in the deaths of K.E. and J.P. from such substance and the serious bodily injuries of J.C. and A.R. This violation involved a quantity of a mixture and substance containing a detectable amount of fentanyl. *See* 21 U.S.C. §§ 841(b)(1)(C), 846.

- Count II: Possession with intent to distribute and distribution of a controlled substance, the use of which resulted in the death of K.E. from such substance. This violation involved a quantity of a mixture and substance containing a detectable amount of fentanyl. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2.

---

[4] The first superseding indictment also added charges against Rodriguez for obstruction of justice and witness tampering.

- • Count III: Possession with intent to distribute and distribution of a controlled substance, the use of which resulted in the death of J.P. from such substance. This violation involved a quantity of a mixture and substance containing a detectable amount of fentanyl. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2.

The case proceeded to trial where Rodriguez testified on behalf of the Government. The Court submitted the case to the jury using a verdict form which asked the jury to specify whether they found the defendant guilty of each offense, and, if so, whether they found that the deaths of K.E. or J.P. resulted from those offenses. The Court did not ask the jury about the bodily injuries of J.C. and A.R. because the Government did not present evidence of those injuries at trial. The jury found Gaddy guilty on all three counts of the second superseding indictment. However, the jury did *not* find that the deaths of K.E. or J.P. resulted from the use of the drugs Gaddy distributed or conspired to distribute in any of the three counts.

The Probation Office prepared a Presentence Investigative Report ("PSR") in which it calculated a base offense level of 32. It added a two-level enhancement because Gaddy possessed a firearm during a drug transaction and a four-level enhancement because Gaddy knowingly misrepresented or marketed a substance containing fentanyl as another substance. This yielded a total offense level of 38. The Guidelines imprisonment range was 235 to 293 months, and the statutory maximum sentence was 20 years per

count. The PSR assigned Gaddy a criminal history category of I based on past convictions for trafficking heroin and possessing marijuana.

The PSR also described the offense conduct, including details about the serious bodily injuries of J.C. and A.R. and the deaths of K.E. and J.P. which all resulted from drug overdoses. While the Guidelines and statutory minimum calculations in the PSR correctly excluded enhancements for the deaths or bodily injuries, the PSR noted that the deaths and injuries may be potential grounds for departure under U.S.S.G. § 5K2.0.

Gaddy raised a host of objections to the PSR. As relevant here, Gaddy objected to the inclusion of facts about the overdoses of J.C., A.R., and K.E. on the grounds that Gaddy did not have any personal knowledge of those facts and therefore could neither admit nor object to their accuracy. He also objected to the PSR's statements that Gaddy supplied Rodriguez with the fentanyl that Rodriguez, in turn, sold to K.E. and J.P., the use of which resulted in their deaths. Finally, he objected to the "conclusion in the PSR that there were multiple victims that suffered serious bodily injury and/or death as a consequence of . . . his drug distribution," noting that the jury determined Gaddy was not guilty of conduct resulting in the deaths of K.E. and J.P.

At the sentencing hearing, Gaddy renewed his objections regarding the PSR's mention of J.C., A.R., K.E., and J.P. The District Court repeatedly confirmed that it would not hold Gaddy liable for K.E.'s and J.P.'s deaths. It stated, "And I certainly am not holding .

. . Mr. Gaddy liable in respect to the jury's verdict for any death." Later, the District Court confirmed, "Well, as to the deaths, [Gaddy] is not responsible for the deaths because the jury made a finding . . . to the contrary . . . ." Again, the Court confirmed, "I'm not holding [Gaddy] liable for any death."

The District Court ultimately adopted the PSR and its Guidelines calculations, finding that the PSR's positions were supported by the evidence from trial. The Court varied downward from the Guidelines range and sentenced Gaddy to a total of 216 months' imprisonment followed by three years' supervised release, noting that the sentence is below the lowest end of the Guidelines range.

After sentencing, Gaddy filed a motion for reconsideration of his sentence. He argued that by adopting the PSR without change, the District Court sentenced Gaddy based on conduct for which the jury acquitted him and that there was a disparity between his sentence and that of his co-defendant, Rodriguez. The Court granted the motion in part to clarify that it "did not sentence Mr. Gaddy for causing deaths, in line with the verdict finding." The District Court then amended the Statement of Reasons to include the same language.

Gaddy now appeals his sentence. He argues that the District Court abused its discretion by imposing a sentence that was greater than necessary to achieve the purposes of sentencing because it considered conduct for which he was acquitted and created a sentencing disparity between Gaddy and his co-defendant.

## II. DISCUSSION

We review the substantive reasonableness of a criminal sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). We give deference to a district court's decision to vary from the Guidelines range to achieve the sentencing purposes described in the 18 U.S.C. § 3553(a) factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). But the district court abuses its discretion and imposes a substantively unreasonable sentence if it, "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rodriguez*, 34 F.4th 961, 969 (11th Cir. 2022). "We will vacate a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (internal quotation marks omitted).

First, Gaddy argues that his sentence was greater than necessary to achieve the purposes of sentencing because "both Probation and the sentencing court provided repeat references to . . . charged conduct that Mr. Gaddy was acquitted of by a jury of his peers." This argument raises two issues: whether the District Court considered the acquitted conduct when it sentenced Gaddy and, if so, whether such consideration was an abuse of discretion. Since

the District Court did not consider the acquitted conduct, we need not reach the secondary issue.

While the PSR referenced the acquitted conduct, it did not include enhancements for that conduct in its Guidelines range calculation. Thus, when the District Court adopted the PSR without change, it did not adopt improper consideration of acquitted conduct. Indeed, the District Court expressly disclaimed consideration of the acquitted conduct at least three times during the sentencing hearing, and then again when it denied Gaddy's motion for reconsideration and amended the Statement of Reasons to include language explicitly denying consideration of the acquitted conduct. Furthermore, the District Court varied downward from the Guidelines range prescribed by the PSR because of Gaddy's family support, difficult childhood, and academic and employment achievements. In announcing the variance, the Court emphasized that it was imposing a sentence lower than the Guidelines range despite the fact that the Guidelines range did not account "in any way, shape, or form" for the deaths, even though the deaths "probably had a whole lot to do" with Gaddy's drug sales. Given its explicit statements to the contrary, we cannot conclude that the District Court considered the acquitted conduct when it sentenced Gaddy.

Second, Gaddy argues that the District Court created a sentencing disparity because it "sentenced [Gaddy] to a greater sentence than [Rodriguez] who entered a plea of guilty to causing the deaths and serious bodily injury" while Gaddy was acquitted of that

conduct.[5] This argument fails because Rodriguez is not an apt comparator.

A sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). When reviewing whether the district court has created an unwarranted disparity, we first ask "whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). If the defendants are not similarly situated, then a disparity between their sentences is not unwarranted. *See United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008) (holding that disparate sentences were not unwarranted where one defendant provided substantial assistance to the Government and the other did not).

Here, Gaddy fails to show an unwarranted sentencing disparity between himself and Rodriguez. Since Gaddy exercised his right to go to trial while Rodriguez accepted a plea and cooperated with the Government, the two are not similarly situated. *United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) ("[F]or purposes of § 3553(a)(6), a defendant who cooperates with the Government and pleads guilty is not similarly situated to his co-defendant who proceeds to trial." (internal quotation marks omitted)).

---

[5] We note that the jury did not make a finding as to the serious bodily injuries. The District Court did not ask the jury for a verdict on the serious bodily injury element because the Government did not enter evidence of those facts at trial.

Gaddy's and Rodriguez's chosen paths led them to different results, but that difference is not unwarranted.

### III. CONCLUSION

For the foregoing reasons, we affirm Gaddy's sentence.

**AFFIRMED.**